## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DREW DAVID NEISSER, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PX-18-2121 |
| WARDEN PHIL MORGAN, *et al.*, | * | |
| Respondents. | * | |
| | *** | |

## <u>MEMORANDUM OPINION</u>

In his Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2254, Petitioner Drew David Neisser challenges the validity of his 2015 state conviction for first-degree and second-degree assault and malicious destruction of property. ECF No. 1 at 1. Respondents contend that the claims fail on several independent grounds. After careful review, the Court concludes no evidentiary hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *see also* 28 U.S.C. § 2254(e)(2). For the following reasons, the Petition is DENIED and DISMISSED, and a Certificate of Appealability shall not issue.

### I.    Background

Neisser's trial concerned three days of violence aimed at his girlfriend, Sheila Santamaria. ECF No. 11-2. According to Santamaria's trial testimony, the two had been at a bar on the evening of January 22, 2015 when Neisser accused Santamaria of "looking at somebody," and told Santamaria "that we were leaving." While going home, Neisser punched Santamaria in the face. ECF No. 11-2 at 15. Once the two arrived home, Santamaria did not want to go inside with Neisser and opted to stay in the car. Santamaria blew the horn for help, but no one responded. *Id.* Neisser

began to destroy Santamaria's car, then went inside.[1]  *Id.* at 16.

 Santamaria further testified that every time she attempted to leave the car to escape, Neisser would "come flying" out their home.  Eventually, Santamaria went inside with Neisser. There, Neisser crushed Santamaria's head into a wall and hit her in the face several times.  ECF No. 11-2 at 17.   While Santamaria was on the floor, Neisser kicked her repeatedly, punched her breasts and ripped out sections of her hair.  *Id.* at 18-19.  Neisser also threatened to kill Santamaria and her family.  *Id.*  at 26.  She escaped to a neighbor's house on January 24th and was taken to a nearby hospital for treatment.  *Id.* at 21**.**

Neisser was indicted in Worchester County Circuit Court on several felonies stemming from this incident.  A jury convicted Neisser in August 2015 of first-degree assault, second degree assault, and malicious destruction of property, but acquitted him of false imprisonment.  ECF No. 11-1 at 9.  On October 22, 2015, Neisser was sentenced to a 10-years confinement for the assault counts and 60 days to be served concurrently for malicious destruction of property.  ECF No. 11-3 at 4.

Neisser challenged on direct appeal the sufficiency of the trial court's reasonable doubt instruction.  ECF No. 11-1 at 30-33.  The Maryland Court of Special Appeals rejected the claim, holding that Neisser's failure to object to the instruction at trial constituted a waiver of any asserted error.  *Neisser v. State*, 2016 WL 4608772 at *1 (Md. Ct. Spec. App., Sept. 6, 2016) (unreported). ECF No. 11-1 at 58-61.

On July 10, 2016, Neisser petitioned for post-conviction relief before the Circuit Court. ECF No. 11-1 at 63.  In the petition, Neisser asserted that his trial counsel had been ineffective for failing to (1) subpoena certain records and lodge certain objections, (2) impeach Santamaria with

---

[1] Neisser also testified at trial that as they drove home on the night of January 22, Santamaria hit a guard rail which caused damage to the car and her injuries.  ECF No. 11-2 at 40.

her criminal record; (3) investigate or cross examine Santamaria about her prior false report that Neisser had sexually assaulted her in October of 2014; and (4) object to the trial court's jury instructions.  Neisser also claimed that counsel should have visited the scene of the crime and interviewed the owner to demonstrate Santamaria was a drug dealer.  Neisser brought a separate *Brady*[2] allegation against the state concerning undisclosed impeachment material involving Santamaria.

Counsel for Neisser amended the Petition to include a more robust *Brady* challenge concerning the State's failure to disclose police reports reflecting that Santamaria had previously, and falsely, accused Neisser of sexual assault in October of 2014.  ECF No. 11-1 at 71.  As to former defense counsel, the amended petition further amplified the ineffective assistance claim of failing to investigate Santamaria's October 2014 false complaint.  *Id*.  The amended petition also argued that counsel erred in failing to introduce evidence of the cost to repair Santamaria's car as proof of motive for Santamaria to blame Neisser for the damage; failing to introduce maps or photographs of where Neisser claimed Santamaria had hit with the car; and failing to object to the trial court's deviation from the pattern jury instruction on the presumption of innocence and reasonable doubt.  *Id*. at 71-72.

On January 6, 2017, the Circuit Court for Worcester County held an evidentiary hearing on Neisser's post-conviction petition.  ECF No. 11-4.  The Circuit Court denied relief on all grounds.  ECF No. 11-1 at 123- 131.  Neisser, through counsel, moved to for leave to appeal the claimed *Brady* error and the ineffectiveness claims stemming from Santamaria's October 2014 false accusation.  *Id*. at 133-134.  The Maryland Court of Special Appeals summarily denied the application.  ECF No. 11-1 at 148-50.

---

[2] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

3

Neisser next filed his petition in this Court on July 1, 2018.  ECF No. 1.[3]  Neisser raises the *Brady* violations and trial counsel's ineffectiveness related to Santamaria's October 2014 false report.  ECF No. 1- 2 at 5, ECF No. 7 at 4-5.  Neisser also contends that trial counsel was ineffective for many of the same reasons argued before the Circuit Court in his post-conviction petition but abandoned in the motion for leave to appeal the denial of post-conviction relief.

Neisser also presses, for the first time in this petition, that his trial counsel offered contradictory testimony in taking different positions at his post-conviction hearing as compared to answers that she provided to the Maryland Attorney Grievance Commission.  ECF No. 1-2 at 5-6.  Finally, Neisser claims error arising from law enforcement having destroyed a 70-minute interview with him concerning the 2014 assault allegation.  ECF No. 1-2 at 5.

The Respondent contends that several claims are procedurally defaulted and those previously raised were correctly decided.  Thus, says Respondent, Neisser is not entitled to relief.  For the following reasons, the Court agrees.

## II.    Procedural Default

A petition brought pursuant to 28 U.S.C. § 2254 may be brought by a person "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  Before any claim may be considered on the merits, the petitioner must present the claim to the highest state court with jurisdiction to hear it, and must raise the claim at every stage, whether it be through post-conviction or on direct appeal.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction

---

[3] While this case was pending, Neisser moved to reopen his state post-conviction proceedings.  ECF No. 27-1.  His motion was summarily denied on April 1, 2020.  ECF No. 27-2.

proceedings); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  Failure to pursue a claim results in procedural default, barring this Court from reaching the claim on the merits.

As an exception to procedural default, the claim may still be reached if the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, that is, conviction of one who is actually innocent.  *See Murray*, 477 U.S. at 495-96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998).  "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time."  *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). Examples of cause include a showing that the factual or legal basis of the claim was unavailable or that some interference by officials prevented petitioner from raising the claim.  *Id.*  Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider reaching the merits if doing so would prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Neisser has not pursued every available state avenue of relief for several of his claims. Specifically, Neisser did not pursue on direct appeal or on appeal from the denial of post-conviction relief, his claims regarding trial counsel's failures to investigate Santamaria or to introduce certain evidence at trial.  Neisser also never raised, prior to this petition, any claims grounded in his defense counsel's purported inconsistent testimony at the post-conviction hearing, or law enforcement's destruction of their interview with Neisser regarding the October 2014 complaint.  Nor do any exceptions to the procedural default rule apply here.  These claims are

procedurally defaulted and thus must be dismissed.[4]

## III.   Adjudication on the Merits

Where claims may be reached on the merits, 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). A federal court must presume that the state reached the correct conclusion, *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), and afford relief only to those cases where the state decision was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the § 2254(d)(1) "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting

---

[4] Alternatively, even if the claims were deemed unexhausted, and thus capable of review on the merits, *see* 28 U.S.C. § 2254(b)(2) *and Duncan v. Walker*, 533 U.S. 167, 191 (2001), none warrant relief. Trial counsel's supposed contradictory answers at the post-conviction proceeding, when compared to those to the Attorney Grievance Commission, bear little on any claim that the attorney was ineffective at trial. As for claims concerning trial counsel's failure to use a defense investigator, the record reflects that counsel in fact had hired an investigator to interview Santamaria and other witnesses. ECF No. 11-4 at 49. Finally, as to the recorded interview of Neisser in October 2014 that had been destroyed, Neisser provides no grounds for this Court to conclude that the recording, if available, would have been relevant, admissible, or even helpful to him at trial.

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (internal quotation marks omitted).   "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).   "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," this Court must nonetheless presume the state court decision correct. *Id.*   The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).

"Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).   This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

With this standard in mind, the Court turns to Neisser's ineffectiveness and *Brady* claims.

**A. Ineffective Assistance of Counsel Claim**

Neisser first contends that trial counsel was ineffective for failing to investigate Santamaria's October 2014 false allegation to the police.   The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.   This "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v.*

7

*Richardson*, 397 U.S. 759, 771, n.14 (1970)).  When reviewing counsel's performance in a state criminal proceeding, a petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S.at 105 (citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

To demonstrate constitutionally ineffective representation, the petitioner must show both that counsel's performance was deficient, and that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687.  As to deficient performance, petitioner must show that counsel's representation fell below the "range of competence normally demanded of attorneys in criminal cases."  *Id.* at 687-88 (citation omitted).  If counsel erred, the Court next considers whether the petitioner was prejudiced by the error.  As to prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 691–94.  The Court need not appraise the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient.  *Id.* at 697.

The Court begins with Neisser's ineffectiveness claim based on trial counsel's failure to investigate Santamaria's false report.  The state post-conviction court rejected this claim.  The state court specifically found that trial counsel had contacted Detective Whitmer, the officer responsible for investigating the October 2014 allegation, who informed counsel that both Santamaria and Neisser each had lobbed questionable accusations at the other.  The state court thus concluded that counsel's decision not to call Whitmer on this point amounted to reasonable trial strategy to avoid

the risk that Whitmer would testify adversely to Neisser. The post-conviction court's conclusions are supported by the record. Accordingly, Neisser has failed to demonstrate by clear and convincing evidence that this Court should upset the well-founded conclusion of the state court. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The post-conviction court's findings withstand scrutiny under § 2254(d) and will not be disturbed.

### B. *Brady* Claim

The Court next turns to Neisser's *Brady* claim grounded in the State's failure to disclose Santamaria's false accusations against Neisser in October of 2014. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985).

To prevail on this claim, petitioner must show that the withheld evidence was both favorable to the defense and that its unavailability calls into question the result of the trial. *Id.* at 678. In this respect, no distinction is made between exculpatory and impeachment evidence. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). As to withheld impeachment evidence, a conviction need not be overturned unless the withholding of such evidence so limited defense cross-examination that "confidence in the outcome of the trial" has been undermined. *Bagley*, 473 U.S. at 678.

The post-conviction court concluded that because Neisser was the subject of Santamaria's October 2014 statement to law enforcement, he knew about her purported lies at the time she testified in his 2015 trial. ECF No. 11-1 at 128; *citing Ware v. State*, 348 Md. 19 (1997); *see also*

*United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990) ("[T]he *Brady* rule does not apply if the evidence in question is available to the defendant from other sources."). Additionally, the court credited that defense counsel knew about Santamaria's report, and the pitfalls of eliciting it through Detective Whitmer, because counsel had discussed the statement with Whitmer in advance of trial. *United States v. Parker*, 790 F.3d 550, 562 (4th Cir. 2015)("[A] *Brady* violation had not occurred if the defense is aware, or should have been aware, of impeachment evidence in time to use it in a reasonable and effective manner at trial."). For these reasons, the court concluded that any *Brady* violation did not justify granting post-conviction relief. The post-conviction court's decision was neither contrary to nor an unreasonable application of the law, and the court's findings of fact are supported by the record. The decision of the post-conviction court denying Neisser's *Brady* claim will not be disturbed.[5]

In sum, the vast majority of Neisser's claims are procedurally defaulted and must be dismissed. For the remaining claims, Neisser has failed to provide any grounds for disturbing the state post-conviction court's denial of relief. Thus, the Petition must be denied and dismissed in its entirety.

### III.  Certificate of Appealability

When a district court dismisses a habeas petition, a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Insofar as the court rejects a petitioner's constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the

---

[5] To the extent Neisser's claims are based on violations of the Maryland discovery rules, they cannot proceed unless the error amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)), *cert. denied*, 440 U. S. 937 (1979); *Mbewe v. Bishop*, 2016 WL 7324632, at *11, n. 14 (D. Md. 2016) (habeas claims "framed solely as a violation of Maryland discovery rules" not cognizable as federal habeas claim.). Neisser has failed to make such a showing.

district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773–74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. at 327.)   Denial of a petition on procedural grounds requires the Petitioner to show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This Court finds that Neisser has not made this showing.   Accordingly, the Court declines to issue a Certificate of Appealability.   Neisser may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.   *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

A separate Order follows.

| | |
|---|---|
| _____6/8/20_____ | _____/S/_____ |
| Date | Paula Xinis |
| | United States District Judge |

11